**In the
United States Court of Appeals
for the Sixth Circuit**

BILLY YORK WALKER,
*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

**On Appeal from the United States District Court
for the Western District of Tennessee at Jackson**

**BRIEF OF APPELLANT**

WILLIAM LEWIS JENKINS JR.
WILKERSON GAULDIN HAYES
JENKINS & DEDMON
112 WEST COURT STREET, P.O.
BOX 220
DYERSBURG, TN 38025-0220
(731) 286-2401
ljenkins@tenn-law.com

*Counsel for Billy York Walker*

**Oral Argument Requested**

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTERESTS

Pursuant to 6th Cir. Rule 26.1, Plaintiff/Appellant Billy York Walker makes the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No, not on the side of Billy York Walker.

/s/ William Lewis Jenkins Jr.                    Date:  11 August 2014
Signature of Counsel
W. Lewis Jenkins Jr.
Counsel for Billy York Walker

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS .................................................................................1

TABLE OF CONTENTS.................................................................2

TABLE OF AUTHORITIES .................................................................4

STATEMENT IN SUPPORT OF REQUEST FOR ORAL ARGUMENT .............7

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION .................................................................................7

STATEMENT OF THE ISSUES.................................................................9

STATEMENT OF THE CASE AND STATEMENT OF THE FACTS..................9

SUMMARY OF THE ARGUMENT .................................................................14

ARGUMENT .................................................................................17

    I.    Standard of Review. .........................................................17

    II.    The statutory text of 18 U.S.C. §921(a)(20) makes clear that civil rights may be restored under federal law and, where that occurs, a federal conviction shall not be considered a conviction under the Gun Control Act. .............................19

    III.    Restoration of civil rights, which can occur by operation of law, means restoration of the individual to the right to vote, to seek and hold public office, and to serve on a jury.........................21

    IV.    Billy York Walker possesses the unrestricted right to vote in federal and state elections. .................................................24

    V.    Billy York Walker possesses the right to serve on a jury in federal court and state court. .........................................27

    VI.    Billy York Walker possesses the right to seek and hold federal office.................................................................................31

VII.   With respect to federal civil rights, restoration of civil rights by operation of law occurs by way of the constitutional structure that grounds federal civil rights in state law and state action. ..............................................................................................32

VIII.  Billy Walker specifically did not seek any "relief from disabilities" that would be barred by *Mullis v. United States*, 230 F.3d 215 (6th Cir. 2000) and *United States v. Bean*, 537 U.S. 71 (2002), but rather sought a declaration of restoration of civil rights. ..................................................................................36

CONCLUSION ........................................................................................39

CERTIFICATE OF COMPLIANCE ......................................................40

CERTIFICATE OF SERVICE .................................................................40

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............41

TABLE OF AUTHORITIES
**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................18

*Beecham v. United States*, 511 U.S. 368 (1994)............................................ *passim*

*Caron v. United States*, 524 U.S. 308 (1998) ............................................ 22, 23, 29

*Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985 (6th Cir. 2007).....................18

*Ehrlich v. Weber*, 88 S.W. 188 (Tenn. 1905) ..........................................................29

*Elec. Storage Battery Co. v. Shimadzu*, 307 U.S. 5 (1939) ....................................20

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ............................................................19

*Hampton v. United States,* 191 F.3d 695 (6th Cir. 1999) ........................................21

*Logan v. United States*, 552 U.S. 23 (2007) ...........................................................22

*May v. Carlton*, 245 S.W.3d 340 (Tenn. 2008) .......................................................29

*Mullis v. United States*, 230 F.3d 215 (6th Cir. 2000).........................................36-

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*,
    399 F.3d 692 (6th Cir. 2005) ................................................................................17

*Pierce Cnty., Wash. v. Guillen*, 537 U.S. 129 (2003).............................................31

*Powell v. McCormack*, 395 U.S. 496 (1969) ...........................................................33

*Ratzlaf v. United States*, 510 U.S. 135 (1994) ........................................................31

*Reynolds v. Sims*, 377 U.S. 533 (1964)....................................................................34

*Richardson v. Ramirez*, 418 U.S. 24 (1974) ...........................................................26

*Russello v. United States*, 464 U.S. 16 (1983).........................................................19

*Sayre v. City of Cleveland*, 493 F.2d 985 (6th Cir. 1974) .......................................18

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291 (6th Cir. 2008).................17

*Slaughter-House Cases*, 83 U.S. 36 (1872) .............................................................36

*Stupak-Thrall v. United States*, 89 F.3d 1269 (6th Cir. 1996)...................................31

*United States v. Bean*, 537 U.S. 71 (2002) ............................................................36

*United States v. Cassidy*, 899 F.2d 543 (6th Cir. 1990) ...................................21, 34

*United States v. Dahms*, 938 F.3d 131 (9th Cir. 1991).......................................34

*United States v. Green*, 532 F.Supp.2d 211 (D. Ma. 2005)..................................30

*United States v. Hall*, 20 F.3d 1066 (CA10 1994).........................................16, 34

*United States v. Janvier*, 599 F.3d 264 (2nd Cir. 2010)........................................20

*United States v. White*, 808 F. Supp. 586 (M.D. Tenn. 1990)...............................28

*Wolf v. Sundquist*, 955 S.W.2d 626 (Tenn. App. 1997) .......................................29

*Woodson v. Porter Brown Limestone Co., Inc.,* 916 S.W.2d 896 (Tenn. 1996) .....29

## Constitutional Provisions

CONSTITUTION OF THE STATE OF TENNESSEE, Article I, section 5 ...................25, 32

CONSTITUTION OF THE STATE OF TENNESSEE, Article IV, section 2 .......................25

CONSTITUTION OF THE UNITED STATES, Article I, section 2, clause 1 ..............25, 34

CONSTITUTION OF THE UNITED STATES, Article I, section 2, clause 2 ....................32

CONSTITUTION OF THE UNITED STATES, Article I, section 3, clause 3 ....................32

## Statutes

18 U.S.C. §921(a)(20)................................................................................. *passim*

28 U.S.C. § 1291 ............................................................................................8

28 U.S.C. §1331 .........................................................................................7, 10

42 U.S.C. §1971(a)(1)...................................................................................35

Firearm Owners Protection Act of 1986, Pub. L. No. 99-308,
    100 Stat. 449 (1986) .......................................................................... 14 n. 3, 20

Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213 (1968) .................... *passim*

Jury System Improvements Act of 1978 ................................................................. 31

Tenn. Code Ann. §2-1-103 .......................................................................................... 26

Tenn. Code Ann. §2-2-102 .......................................................................................... 27

Tenn. Code Ann. §2-2-139 .......................................................................................... 27

Tenn. Code Ann. §3-1-101 .......................................................................................... 26

Tenn. Code Ann. §40-20-114 ...................................................................................... 33

Tenn. Code Ann. §40-29-101 ........................................................................... 28, 29, 30

Tenn. Code Ann. §40-29-105 ...................................................................................... 27

Tenn. Code Ann. §40-29-106 ...................................................................................... 27

Tenn. Code Ann. §40-29-201 ...................................................................................... 27

Tenn. Code Ann. §40-29-205 ...................................................................................... 27

## Regulations

27 C.F.R. §478.144 ........................................................................................................

## Rules

Fed. R. App. P. 4 ............................................................................................................ 8

*Fed. R. Civ. P. 12* ......................................................................................................... 18

Fed. R. Civ. P. 56 .......................................................................................................... 19

## Other Authorities

10A CHARLES A. WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 2712 ....................................................................................... 8

H.R. Rep. No. 1652, 95th Congress, 2nd Sess, *reprinted in* 978 U.S. Code Congressional & Admin. News 5477 ................................................................. 19

<u>STATEMENT IN SUPPORT OF REQUEST FOR ORAL ARGUMENT</u>

The Appellant Billy York Walker requests oral argument in this case. Oral argument should be granted because this case involves an important issue regarding the restoration of a fundamental right. In addition, the question appears to be a question of first impression in this circuit.

<u>STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION</u>

Billy York Walker filed this civil action 15 July 2013 seeking a declaration that his federal civil rights had been restored by operation of federal law. (R. 1, Complaint, Page ID #1-35.) Mr. Walker had been convicted of certain non-violent offenses in Case No. CR-87-20074 in the United States District Court for the Western District of Tennessee at Jackson in 1987, (R. 1, Complaint ¶4, Page ID # 2; R. 5, Answer ¶4, Page ID #45), and in the present case he sought a declaration that, upon the undisputed facts he presented, the question left open in footnote * in *Beecham v. United States*[1] should be answered by a declaration that Mr. Walker's federal civil rights had been restored by operation of federal law under the Constitution of the United States. The District Court had jurisdiction under 28 U.S.C. §1331.

On 5 June 2014, after Mr. Walker filed a motion for summary judgment and

---

[1] *Beecham v. United States*, 511 U.S. 368, 373 n.* (1994).

the United States filed a motion for judgment on the pleadings, the District Court entered an order dismissing Mr. Walker's case in its entirety: the District Court determined that Mr. Walker's federal civil rights had not been restored by operation of law on the undisputed facts presented in the case; the District Court also held that the procedure outline in 18 U.S.C. §925(c) represents the sole method for "removal of federal firearms disability[.]" (R. 31, Order, Page ID #267-276.) The United States had urged the District Court to dismiss the case on standing grounds, (R. 15, Motion for Judgment on the Pleadings, Page ID# 71-79), but the District Court did not address the standing issue in its order dismissing the case. (R. 31, Order Granting Defendant's Motion for Judgment on the Pleadings and Denying Plaintiff's Motion for Summary Judgment, Page ID# 267-276.)

On 12 June 2014, Billy York Walker filed a notice of appeal, within the sixty day time period permitted for that act under Fed. R. App. P. 4(a)(1)(B) when the United States is a party to the suit. (R. 32, Notice of Appeal, Page ID #277)

Mr. Walker's notice of appeal contained the elements required by the Federal Rules of Appellate Procedure. (R. 32, Notice of Appeal, Page ID #277) All procedural steps required to perfect this appeal under the Federal Rules of Appellate Procedure have been accomplished, (*id.*), and this court has jurisdiction of this cause under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Billy York Walker possesses the right to vote in federal elections, to seek and hold federal office, and to serve on a federal jury: his federal civil rights have been restored and no act by a government official is required to effect the restoration the Constitution of the United States and federal law. Accordingly, Mr. Walker's federal civil rights have been restored within the meaning of 18 U.S.C. §921(a)(20), so that he is not a person prohibited from receiving or possessing a firearm under the Gun Control Act of 1968, as amended. The District Court's decision should be reversed and summary judgment should be granted to Billy York Walker on the undisputed facts of this case.

## STATEMENT OF THE CASE AND STATEMENT OF THE FACTS

Billy York Walker filed this civil action on 15 July 2013: Mr. Walker sought a declaratory judgment that his civil rights had been restored by operation of federal law, a judgment that, upon the undisputed facts he presented, the question left open in footnote * in *Beecham v. United States*[2] should be answered by a judicial determination that Mr. Walker's federal civil rights had been restored by operation of federal law under the Constitution of the United States. (R. 1, Complaint, Page ID #1-35.)

---

[2] *Beecham v. United States*, 511 U.S. 368, 373 n.* (1994).

On 22 October 2013, the United States filed an answer (R. 5, Answer, Page ID #45-49); in its answer, the United States challenged the standing of Billy York Walker to bring this action. (R. 5, Answer, Page ID #45-49; *see also* R. 15, Motion for Judgment on the Pleadings, Page ID #71-79.) Mr. Walker filed an amended complaint to ensure his allegations regarding standing were sufficiently detailed. (R. 17, First Amendment to Complaint, Page ID #82-87; R. 27, First Amended Complaint, Page ID #180-214.) The allegations of the first amended complaint addressed sufficiently any challenge to standing, as did Mr. Walker's argument regarding standing in his response to the motion for judgment on the pleadings. (R. 28, Response to Motion for Judgment on the Pleadings, Page ID#215-216; R. 28, Memorandum of Law in Support of Response to Motion for Judgment on the Pleadings, Page ID#219-224) The District Court did not address the standing issue in its order dismissing the case, (R. 31 Order Granting Defendant's Motion for Judgment on the Pleadings and Denying Plaintiff's Motion for Summary Judgment, Page ID # 267-276), and appears to have accepted the response on the standing issue presented by Billy York Walker. (*See* R. 31, Order, Page ID#267-268.)

The case arose from what the District Court correctly characterized as an undisputed set of facts. (R. 31, Order, Page ID #267.) Billy York Walker is a resident and citizen of Tennessee, a state within the United States of America. (R.

23, Declaration of Billy York Walker ¶1 [attached as Exhibit A to the Statement of Undisputed Material Facts by Billy York Walker in Support of his Motion for Summary Judgment], Page ID #138.)  In 1987, Billy York Walker was convicted of certain non-violent offenses in Case No. CR-87-20074 in the United States District Court for the Western District of Tennessee at Jackson.  (R. 1, Complaint ¶4, Page ID # 2; R. 5, Answer ¶4, Page ID #45.)  As a result of his convictions, Billy York Walker lost a number of rights and privileges allowed to citizens of the United States of America and the State of Tennessee.  (R. 27, First Amended Complaint at ¶4, Page ID #181.)

On 1 June 2010, after notice to the District Attorney for the Twenty-Ninth Judicial District of Tennessee and the United States Attorney for the Western District of Tennessee, the Circuit Court of Tennessee for the Twenty-Ninth Judicial District entered an order restoring the full citizenship and civil rights to Billy York Walker under Tennessee law.  (R. 1, Complaint, Ex. A, Page ID # 9-10; R. 27, First Amended Complaint, Exhibit 1 at 2-3, Page ID #189-190.)  Among those rights restored "without limitation" were the right to vote, the right to hold office, and the right to serve on a jury.  (R.1, Complaint, Ex. A, Page ID # 12; R. 27, First Amended Complaint, Ex. 1 at 2, Page ID #189.)  On 22 March 2012, the Circuit Court clarified its order and specifically restored to Billy York Walker the

"explicit right to bear and possess firearms." (R. 1, Complaint, Ex. B, Page ID #12, R. 27, First Amended Complaint, Ex. 2 at 2, Page ID # 192.)

Despite the Circuit Court's order, the United States of America continued to designate Billy York Walker as a person prohibited from possessing or purchasing a firearm. (R. 23, LR 56.1 Statement of Facts, Ex. A., Declaration of Billy York Walker ¶¶2, 5-6, Page ID #138-139; R. 27, First Amended Complaint at ¶18, Page ID # 184.) In January 2013, Billy York Walker attempted to purchase a handgun at Gander Mountain, a sporting goods store that sells firearms, in Jackson, Tennessee, but was prohibited from doing so. (R. 27, First Amended Complaint, ¶18, Page ID # 184.) On January 7, 2013, Billy York Walker received a letter from the Tennessee Bureau of Investigation informing him that this denial was based upon the Federal Bureau of Investigation's listing of Plaintiff as disqualified for firearms in their records database. (R. 27, First Amended Complaint at ¶18, Page ID # 184; Ex. 3, Page ID # 194-195.)

The designation by the United States of America that Billy York Walker is a person prohibited from possessing or purchasing a firearm has resulted in direct, tangible harm to Billy York Walker. (R. 23, Declaration of Billy York Walker ¶¶2-6, Exh. A [to Declaration], Page ID #138-139.) It has prevented him from purchasing a firearm and continues to prevent him from possessing a firearm. (R.

23, Declaration of Billy York Walker ¶¶2-6, Exh. A [to Declaration], Page ID # 138-139.)

The parties both filed dispositive motions in the District Court: the United States filed a motion for judgment on the pleadings (R. 15, Motion for Judgment on the Pleadings, Page ID #71-79) and Billy York Walker filed a motion for summary judgment. (R. 18-20, Motion for Summary Judgment, LR 56.1 Statement of Facts, Memorandum of Law, Page ID # 88-133; R. 23-24, Notices of Correction, Page ID #134-176.) On 5 June 2014, the District Court entered an order dismissing Mr. Walker's case in its entirety: the District Court determined that Mr. Walker's federal civil rights had not been restored by operation of law on the undisputed facts presented in the case and that restoration of federal civil rights by operation of federal law could not occur. (R. 31, Order, Page ID #269-273.) The District Court also held that the procedure outline in 18 U.S.C. §925(c) represents the sole method for "removal of federal firearms disability[.]" (R. 31, Order, Page ID #273-275) In its ruling, however, the District Court did not heed the plain meaning difference between "restoration of civil rights" and "relief" from disabilities, and its decision is incorrect due to that error.

On 12 June 2014, Billy York Walker filed a notice of appeal to this Court, within the sixty day time period permitted for that act under Fed. R. App. P.

4(a)(1)(B) when the United States is a party to the suit.  (R. 32, Notice of Appeal, Page ID #277.)

## SUMMARY OF THE ARGUMENT

The definitions within the Gun Control Act of 1968, as amended ("GCA"), permit a person who has a criminal conviction that otherwise would disqualify that person from possessing, shipping, receiving, or transporting firearms in interstate commerce to possess a firearm (and engage in the other otherwise prohibited actions) so long as that person "has had civil rights restored."[3]  In relevant part, the definitions applicable to this dispute provide:

> The term "crime punishable by imprisonment for a term exceeding one year" does not include * * * * any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.  What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. §921(a)(20) [introductory language and last unnumbered sentence].

_____

[3] Gun Control Act of 1968, Pub. L. No. 90-618, §102, 82 Stat. 1213, 1216 (1968); Firearm Owners Protection Act of 1986, Pub. L. No. 99-308, §101, 100 Stat. 449, 449-450 (1986).  The section of the GCA under consideration in this memorandum is currently codified, as amended, at the last unnumbered sentence of 18 U.S.C. §921(a)(20).  In this memorandum, the statute may be referred to, at times, as the "exemption clause" (as it was called by the United States Supreme Court in *Beecham v. United States*, 511 U.S. 368, 369 (1994)) or as §921(a)(20).

In 1994, the United States Supreme Court determined that the choice of law provision within 18 U.S.C. §921(a)(20), i.e., the "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held" language, means that under §921(a)(20), civil rights must be restored in the jurisdiction in which the conviction originally occurred. *Beecham v. United States*, 511 U.S. 368 (1994). Consequently, in order to remove an otherwise disqualifying state court conviction from the scope of the GCA, civil rights must be restored under state law; in order to remove an otherwise disqualifying federal conviction from the scope of the GCA, civil rights must be restored under federal law. *Id.* at 371, 374.

The *Beecham* court decided only that the argument raised by the defendant in that case, i.e., "whether these restorations of civil rights by States could remove the disabilities imposed as a result of Beecham's and Jones' federal convictions[,]" *id.* at 370, and declined to determine what constituted a restoration of civil rights after a disqualifying conviction in federal court, saying:

> We express no opinion on whether a federal felon cannot have his civil rights restored under federal law. This is a complicated question, one which involves the interpretation of the federal law relating to federal civil rights, see U.S. Const., Art. I, § 2, cl. 1 (right to vote for Representatives); U.S. Const., Amdt. XVII (right to vote for Senators); 28 U.S.C. § 1865 (right to serve on a jury); consideration of the possible relevance of 18 U.S.C. § 925(c) (1988 ed., Supp. IV), which allows the Secretary of the Treasury to grant relief from the disability imposed by § 922(g); and the determination whether civil rights must be restored by an affirmative act of a Government official, see *United States v. Ramos*,

961 F.2d 1003, 1008 (CA1), *cert. denied*, 506 U.S. 934 (1992), or whether they may be restored automatically by operation of law, see *United States v. Hall*, 20 F.3d 1066 (CA10 1994). We do not address these matters today.

*Id.* at 373 n.*.  While the *Beecham* Court did not consider *how* a person may have civil rights restored under federal law, its holding does not question that the availability of such remedy: "We therefore conclude that petitioners can take advantage of §921(a)(20) only if they have had their civil rights restored under federal law . . . ."  *Id*. at 374.

Billy York Walker now asserts that the question not answered by the *Beecham* court must be answered by a determination that restoration of federal civil rights occurs by operation of law once sufficient conditions have been met, and Billy York Walker asserts that he has met those conditions:  Billy York Walker possesses the right to vote in federal elections, the right to hold federal office, and the right to serve on a jury in federal court; in addition, his right to possess a firearm of any type under state law has been restored fully and without limitation.  Consequently, the United States of America has injured Billy York Walker by its continuing wrongful categorization of him as a person prohibited from possessing a firearm, when in fact he does not fall into that category.  The judgment of the District Court that permits the United States to continue that wrongful conduct should be reversed.

ARGUMENT

## I.      Standard of Review.

The District Court dismissed this matter on a motion for judgment on the pleadings made by the United States.  (R. 31, Order Granting Defendant's Motion for Judgment on the Pleadings and Denying Plaintiff's Motion for Summary Judgment, Page ID # 267-276; R. 15, Motion for Judgment on the Pleadings, Page ID # 71-79)  Accordingly, this Court reviews the case on a *de novo* basis, using the same standard employed to review dismissals for failure to state a claim under *Fed. R. Civ. P. 12*(b)(6).  *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) ("Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same de novo standard as motions to dismiss pursuant to Rule 12(b)(6).")   This Court has stated:

> In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005)(internal quotation marks and citations omitted).

Since the United States of America identified no evidence it intends to present in this case in the Court below, the District Court correctly decided that "[t]he facts in this matter are wholly undisputed[,]" (R. 31, Order Granting

17

Defendant's Motion for Judgment on the Pleadings and Denying Plaintiff's Motion for Summary Judgment, Page ID # 267-276), but the District Court incorrectly applied the relevant law to the undisputed facts. Accordingly, Billy York Walker seeks a judgment from this Court reversing the decision of the District Court and granting the relief he sought in the Court below.

Under the applicable decisions of the U.S. Supreme Court and the strictures of Fed. R. Civ. P. 56, this Court reviews Mr. Walker's request *de novo*, and may grant summary judgment in this Court where no genuine dispute exists concerning any material fact. *See Sayre v. City of Cleveland*, 493 F.2d 64, 70 (6th Circ. 1974) (appellate court grant reverse denial of summary judgment and grant summary judgment to moving party when no disputed issues of material fact exist); *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 994 (6th Cir. 2007) ("Appellate courts review a district court's grant of summary judgment de novo.") *See also* Fed. R. Civ. P. 56(c) *construed in Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See generally* 10A CHARLES A. WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 2712 [hereinafter WRIGHT & MILLER]. What constitutes a material fact must be discerned by reference to the applicable substantive law. *Anderson*, 477 U.S. at 248.

**II.** **The statutory text of 18 U.S.C. §921(a)(20) makes clear that civil rights may be restored under federal law and, where that occurs, a federal conviction shall not be considered a conviction under the Gun Control Act.**

The clear text of 18 U.S.C. §921(a)(20) refers generically to a "conviction" and "restoration of civil rights" without limiting such terms to those under state law. The term "crime punishable by imprisonment for a term exceeding one year," the text states, "shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter . . . ." *Id*. No distinction between state and federal law is made as to such expungements, set asides, pardons, or restorations of civil rights.

By contrast, when the text limits itself to state law, it does so explicitly, as in the reference to "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. §921(a)(20). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted). *See also Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("a negative inference may be drawn from the exclusion of language from one statutory provision that is

included in other provisions of the same statute").

To restrict a "conviction" for which there can be a "restoration of civil rights" to a state conviction and a restoration of civil rights under state law, and not to recognize the applicability of "a restoration of civil rights" for a federal conviction to such a restoration of rights under federal law, would "read into the law words which plainly are missing. We cannot thus rewrite the statute." *Elec. Storage Battery Co. v. Shimadzu*, 307 U.S. 5, 14 (1939). "But to adopt the government's argument would be to rewrite the statute to say something that it does not say because we or the government think the revised version would be preferable." *United States v. Janvier*, 599 F.3d 264, 268 (2nd Cir. 2010).

Finally, no reason exists why Congress would have limited restoration of civil rights to state convictions and excluded such from federal convictions. Section 921(a)(20) was enacted as part of the Firearms Owners' Protection Act, P.L. 99-308, 100 Stat. 449, 450 (1986). In passing the Firearm Owners' Protection Act, "The Congress finds that – (1) the rights of citizens – (A) to keep and bear arms under the Second Amendment to the United States Constitution; . . . require additional legislation to correct existing firearms statutes and enforcement policies . . . ." *Id.* §1(b). The restoration of civil rights was deemed an appropriate manner to allow a person to regain Second Amendment rights, and no reason exists why

Congress would allow such restoration only for state convictions and not for federal convictions.

## III. Restoration of civil rights, which can occur by operation of law, means restoration of the individual to the right to vote, to seek and hold public office, and to serve on a jury.

This Court determined, in 1990, that the operation of the clause in 18 U.S.C. §921(a)(20) pertaining to the restoration of civil rights did not depend on any formality or specific document, but on the actual investment in the affected person of substantive "civil rights," including "the right to vote, the right to seek and hold public office and the right to serve on a jury." *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir. 1990). This Court stated:

> The language of the statute points out the category of "rights" that Congress intended to reach in the definition of "crime punishable by imprisonment for a term exceeding one year." The fact that Congress used the term "civil rights," as opposed to "all rights and privileges," as the government would have us interpret the statute, indicates that Congress intended to encompass those rights accorded to an individual by virtue of his citizenship in a particular state. These rights include the right to vote, the right to seek and hold public office and the right to serve on a jury.

*Id.* at 549. *Accord Hampton v. United States,* 191 F.3d 695, 699 (6th Cir. 1999) (under §921(a)(20), the "focus is particularly placed on the three civil rights considered key by the Sixth Circuit—the right to vote, hold public office, and serve on a jury").

Discussion by the United States Supreme Court supports the decisions of

this Court: the Supreme Court twice recited in passing the three rights mentioned by this Court as constituting the rights to be restored in order to effect a restoration under §921(a)(20). *Caron v. United States*, 524 U.S. 308, 316 (1998); *Logan v. United States*, 552 U.S. 23, 28 (2007). In *Logan*, the Supreme Court cited *Caron* and said: "While § 921(a)(20) does not define the term 'civil rights,' courts have held, and petitioner agrees, that the civil rights relevant under the above-quoted provision are the rights to vote, hold office, and serve on a jury." 552 U.S. at 28.

In addition, *Caron* settled a question that had occupied some courts of appeal prior to its promulgation and that the *Beecham* opinion has noted as being an open question: whether or not a restoration that occurred by operation of law, rather than by way of an individualized decision by a state actor, qualifies as a restoration under §921(a)(20). *Caron*, 524 U.S. at 313. *Compare Beecham*, 511 U.S. at 373 n.* (noting the disagreement between two courts of appeal on the question). In *Caron* the Supreme Court said:

> We note these preliminary points. First, Massachusetts restored petitioner's civil rights by operation of law rather than by pardon or the like. This fact makes no difference. Nothing in the text of §921(a)(20) requires a case-by-case decision to restore civil rights to this particular offender. While the term "pardon" connotes a case-by-case determination, "restoration of civil rights" does not.

*Caron*, 524 U.S. at 313. Consequently, one of the open questions noted in the *Beecham* footnote has been resolved by the Supreme Court: civil rights may be restored "automatically by operation of law"; restoration does not entail "an

affirmative act of a Government official[.]"  *Compare Beecham*, 511 U.S. at 373 n.* *with Caron*, 524 U.S. at 313.

The District Court correctly noted that this Court faced, in *Cassidy*, a restoration under state law, not federal law, and that *Logan* and *Caron* likewise concerned restoration of civil rights under state law, (R. 31, Order, Page ID #272), but the District Court did not discuss that Mr. Walker relied on the very wording of *Beecham v. United States* to show that the set of rights constituting a "restoration" under this Court's decision in *Cassidy* are the same rights that the United States Supreme Court stated would have to be considered in analyzing "restoration" under federal law.  *Compare Cassidy*, 899 F.2d at 549 *with Beecham*, 511 U.S. at 373 n.* (both cases discussing the right to vote and the right to serve on a jury as considerations on the question of whether civil rights have been "restored").  The United States Supreme Court stated, in *Beecham*, without equivocation, that consideration of whether federal civil rights had been restored involved federal voting rights and federal jury service rights, and then the United States Supreme Court cited two Court of Appeals cases that discussed restoration of state civil rights by operation of law in the very footnote discussing restoration of federal civil rights.  *Beecham*, 511 U.S. at 373 n.*  *Beecham* demonstrates that the federal civil rights correspond, in the respects relevant for the question of restoration under 18 U.S.C. §921(a)(20) to state civil rights, and that the considerations for

determining when a restoration of federal civil rights has occurred parallel the considerations for determining when state civil rights have been restored. Consequently, the District Court's dismissal of *Cassidy* and other cases discussing restoration of state civil rights as authority in the present dispute, (R. 31, Order, Page ID #272), was erroneous.

Applying the reasoning of *Beecham, Caron*, and *Cassidy*, yields this conclusion: when a person convicted of a felony in federal court possesses the right to vote (in federal and state elections), the right to hold office (federal and state offices), and the right to serve on a jury (in federal and state courts), civil rights have been restored sufficiently to actuate the restoration provision in §921(a)(20) and to render an otherwise disqualifying conviction inoperative for the purposes of the GCA.

## IV. Billy York Walker possesses the unrestricted right to vote in federal and state elections.

Billy York Walker possesses the right to vote in federal elections. As the Supreme Court alluded to in *Beecham*, the right to vote in federal elections appears on the face of the United States Constitution. *See Beecham*, 511 U.S. at 373 n.*. The language of the constitutional provisions mentioned in *Beecham* reveals that qualifications to vote in federal elections turns on state law:

> [T]he Electors in each State [for members of the U.S. House of Representatives] shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.

24

CONSTITUTION OF THE UNITED STATES, Article I, section 2, clause 1.

> The electors in each state [for members of the U.S. Senate] shall have the qualifications requisite for electors of the numerous branch of the state legislatures."

CONSTITUTION OF THE UNITED STATES, Amendment XVII.  *Cf. also Richardson v. Ramirez*, 418 U.S. 24, 52-56 (1974) (determining that no constitutional prohibition existed on state laws disenfranchising those persons convicted of felonies).[4]

Under Tennessee law applicable to Billy York Walker and Exhibit A to the complaint, Billy York Walker possesses the right to vote in federal elections.  First, the Tennessee House of Representatives constitutes Tennessee's most numerous legislative branch.  Tenn. Code Ann. §3-1-101.  Tenn. Code Ann. §2-1-103 governs the right to vote in elections for the Tennessee House of Representatives: "All elections for public office, for candidacy for public office, and on questions submitted to the people shall be conducted under this title."  Tenn. Code Ann. §2-1-103.  As permitted by the Tennessee Constitution,[5] the legislature has restricted

---

[4] The state voter qualification law would have to comply with Amendments XV (prohibiting impairment of voting rights on account of race), XIX (prohibiting impairment of voting rights on account of sex), XXIV (prohibiting poll taxes), and XXVI (setting the voting age at eighteen).

[5] "Laws may be passed excluding from the right of suffrage persons who may be convicted of infamous crimes." CONSTITUTION OF THE STATE OF TENNESSEE, Article IV, section 2.  "The elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of

the franchise of those convicted of certain crimes. Tenn. Code Ann. §2-2-102; *see also* Tenn. Code Ann. §40-29-201 (describing the persons from whom suffrage is removed upon conviction of a crime). Even persons who have been convicted of "infamous" crimes in federal or state court, however, may seek restoration of all citizenship rights, including the right to vote. Tenn. Code Ann. §40-29-101 to §40-29-106 (restoration of citizenship rights, including voting rights); Tenn. Code Ann. §40-29-201 to §40-29-205 (restoration of voting rights only). Once either citizenship or voting rights have been restored, the person may vote again in state and federal elections in Tennessee:

> Any person who has forfeited the right of suffrage because of conviction of an infamous crime may register to vote and vote at any election for which the person is eligible by submitting sufficient proof to the administrator of elections in the county in which the person is seeking to register to vote, that **** [t]he person's full rights of citizenship have been restored as prescribed by law.

Tenn. Code Ann. §2-2-139. *See also* Tenn. Code Ann. §40-29-105 (describing restoration of citizenship rights).

The order attached as Exhibit A to the complaint in this matter definitively establishes the eligibility of Billy York Walker to vote for elections of members of the most numerous house in Tennessee's legislature. (R. 1, Complaint, Exhibit A, Page ID #9-10; First Amended Complaint, Exhibit A, Page ID #189-190.) Under

---

competent jurisdiction." CONSTITUTION OF THE STATE OF TENNESSEE, Article I, section 5.

the Constitution of the United States, then, the federal voting rights of Billy York Walker have been restored.

## V. Billy York Walker possesses the right to serve on a jury in federal court and state court.

The order of the Circuit Court of Tennessee for the Twenty-Ninth Judicial District restored to Billy York Walker the right to serve on a jury, as well as his other civil and citizenship rights. (R. 1, Complaint, Exhibit A, Order, 1 June 2010, pp. 1-2, Page ID # 9-10.) Given the restoration of those rights, Billy York Walker possesses the right to serve on juries in federal and state court.

First, Tennessee law restored to Billy York Walker the right to serve on a jury following restoration of his civil and citizenship rights. *See* Tenn. Code Ann. §40-29-101 ("Persons rendered infamous or deprived of the rights of citizenship by the judgment of any state or federal court may have their full rights of citizenship restored by the circuit court.")[6] The state court orders that restored all of the civil

---

[6] The United States District Court for the Middle District of Tennessee discussed in *dicta* whether a blanket restoration under Tenn. Code Ann. §40-29-101 would operate to restore the right to sit on a jury. *See United States v. White*, 808 F. Supp. 586, 589 (M.D. Tenn. 1990). The *White* case concerned a person who had taken no action at all to obtain a restoration of rights, and did not involve an order granting a restoration. The *White* court recognized that it need not even address the issue: "Regardless, the resolution of this question is unnecessary on the facts of the case before this Court." *Id.* Consequently, the discussion in *White* has no bearing on the present case, because the order restoring the full citizenship rights of Billy York Walker under Tenn. Code Ann. §40-29-101 specifically provides that Mr. Walker's right to serve on a jury has been restored.

and citizenship rights of Billy York Walker specifically restored his right to serve on a jury. (R. 1, Complaint, Exhibits A and B, Orders, Page ID #8-13.)

Second, the statute governing federal jury service contains a specific exclusion for its disability provisions for a person convicted of a felony whose civil rights have been restored:

> In making such determination the chief judge of the district court, or such other district court judge as the plan may provide, or the clerk if the court's jury selection plan so provides, shall deem any person qualified to serve on grand and petit juries in the district court unless he—
>
>      * * * *
>
> (5) has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and *his civil rights have not been restored*.

28 U.S.C. §1865(b) (introductory language and subparagraph 5) (emphasis added).

The Supreme Court's decision in *Beecham v. United States*, 511 U.S. 368

---

Moreover, Tenn. Code Ann. §40-29-101 *et seq.* permits a court to make a "full restoration of citizenship rights." Tenn. Code Ann. §40-29-101. Jury service constitutes one important citizenship right. *Wolf v. Sundquist*, 955 S.W.2d 626, 630 (Tenn. App. 1997) ("This right [service on a jury] is of constitutional significance because providing all citizens with an opportunity to participate in the fair administration of justice is fundamental to our democratic system.") *Cf. also Woodson v. Porter Brown Limestone Co., Inc.,* 916 S.W.2d 896, 903 (Tenn. 1996) (holding that jurors have "standing to contest racially-based peremptory challenges"); *May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (referring, in passing to "serving as juror, and other rights of citizenship"); *Ehrlich v. Weber*, 88 S.W. 188, 189 (Tenn. 1905) (again, referring in passing to sitting on a jury and "other . . . political rights of citizenship" in a list in the discussion in the case).

(1994) concerned a matter of statutory interpretation, i.e., whether the "choice-of-law clause" in 18 U.S.C. §921(a)(20) mandated that restoration be accomplished under federal law; the Court determined that the presence of the choice-of-law clause did mean that an effective restoration under §921(a)(20) must occur according to federal law. *Beecham*, 511 U.S. at 369-374 (discussing the effect and application of the choice-of-law clause and concluding, at p. 374, that the choice-of-law clause gave the statute a "plain, unambiguous meaning"). *See also United States v. Green*, 532 F.Supp.2d 211, 212-214 (D. Ma. 2005) (applying state law to determine the scope of the restoration provision in §1865(b)(5) and making no distinction between convictions from federal court and convictions from state court).[7]

Congress did not use any choice-of-law clause in 28 U.S.C. §1865(b)(5); instead, it used the words "and his civil rights have not been restored." The words "and his civil rights have not been restored" mean exactly what they say, i.e., have the civil rights of the person been restored. Tenn. Code Ann. §40-29-101 *et seq.* The order entered by the Circuit Court of Tennessee for the Twenty-Ninth Judicial

---

[7] The holding of the *Green* court to the effect that no "affirmative act of restoration is required" to actuate the restoration provision in §1865(b)(5) probably has been vindicated by the Supreme Court's determination in *Caron v. United States* that the restoration provision in 18 U.S.C. §921(a)(20)(B) did not require any affirmative act in order to be effective, but could occur by operation of law. *Caron v. United States*, 524 U.S. 308, 313 (1998). *See also* discussion, quote, and citations in Section 5 above.

District on 1 June 2010 shows that Billy York Walker has received a full restoration of his civil and citizenship rights, including, but not only, his right to serve on a jury. (R. 1, Complaint, Exhibit A, Order, 1 June 2010, pp. 1-2, Page ID # 9-10.)

In support of the plain meaning of the statute, the 1978 amendment to 28 U.S.C. §1865 deleted the words "by pardon or amnesty" after the word "restored" in the last line of subsection (5). Jury System Improvements Act of 1978, Pub. L. No. 95–572, §3, 92 Stat. 2453, 2453 (1978). By deleting the restrictive language and leaving only "and his civil rights have not been restored[,]" Congress made the statute broader than it had been previously. The Supreme Court has said: "[W]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Pierce Cnty., Wash. v. Guillen*, 537 U.S. 129, 145 (2003) (internal quotation marks and citation omitted).

To the extent relevant,[8] the legislative history of the statute supports the plain meaning of the statute and the inference to be drawn from the 1978 amendment that broadened the coverage of the phrase "has had his civil rights restored":

Section 1865(b)(5) of title 28 now provides that persons shall be

_____

[8] This Court, following the U.S. Supreme Court, has stated "we do not resort to legislative history to cloud a statutory text that is clear[.]" *Stupak-Thrall v. United States*, 89 F.3d 1269 (6th Cir. 1996) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994)).

qualified for federal jury service unless, *inter alia*, they have been convicted or are facing pending charges for a state or federal crime punishable by imprisonment for more than 1 year and their civil rights have not been restored by pardon or amnesty. Section 1869(h) further requires that the juror qualification form mailed to prospective jurors elicit this information. Section 3 of the bill would amend these statutory sections by striking the words 'by pardon or amnesty,' thus making eligible for jury service persons who have been convicted but have later had their civil rights restored in any manner recognized by law.

H.R. Rep. No. 1652, 95th Congress, 2nd Sess., at p. 10, *reprinted in* 1978 U.S. Code Congressional & Admin. News 5477, 5483 (1978). The legislative history does not cloud, but supports, the plain meaning, i.e., the persons with an otherwise disqualifying conviction may serve on a federal jury when their civil rights have been restored by any procedure, and the statute makes no distinction between restoration under federal law and restoration under state law.

The order attached as Exhibit A to the complaint and the first amended complaint, (R. 1, Complaint, Exhibit A, Page ID #9-10; First Amended Complaint, Exhibit A, Page ID #189-190), and substantive Tennessee law definitively establish the eligibility of Billy York Walker to serve on state juries and, by way of 28 U.S.C. §1865, on federal juries also. Billy York Walker thus possesses the federal civil right to serve on a federal jury.

## VI. Billy York Walker possesses the right to seek and hold federal office.

The United States Constitution prescribes three qualifications for service in the Congress of the United States: a minimum age (25 for the House of

Representatives and 30 for the Senate); a citizenship requirement (seven years of citizenship in the United States for Representatives and nine years for Senators); and a residency requirement (of living in the State from which the person is elected).  CONSTITUTION OF THE UNITED STATES, Article I, section 2, clause 2; *id.*, section 3, clause 3.  Although the sole judge of the qualifications of their members, *id.*, CONSTITUTION OF THE UNITED STATES, Article I, section 5, neither house may constitutionally prescribe any additional qualifications for membership.  *Powell v. McCormack*, 395 U.S. 496, 549-550 (1969).

The terms of the Constitution of the United States of America and the order attached as Exhibit A to the complaint and the first amended complaint in this matter, (R. 1, Complaint, Exhibit A, Page ID #9-10; First Amended Complaint, Exhibit A, Page ID #189-190), and the text of the United States Constitution definitively establishes the eligibility of Billy York Walker to seek and hold federal and state offices.[9]

## VII. With respect to federal civil rights, restoration of civil rights by operation of law occurs by way of the constitutional structure that grounds federal civil rights in state law and state action.

Many of the cases on the restoration of civil rights by operation of law have in the background explicit state-law structures that provide for automatic

---

[9] Billy York Walker lost the right to hold state office upon his conviction of a felony and regained the right to hold state office upon restoration of his civil rights.  Tenn. Code Ann. §40-20-114.

restoration of civil rights upon the occurrence of certain events. *See, e.g., United States v. Hall*, 20 F.3d 1066, 1068 (10th Cir. 1994) (quoting Colorado's constitutional provision providing for the right to vote and the rights of citizenship to return to convicted persons after they serve the full term of confinement); *United States v. Dahms*, 938 F.3d 131, 133 (9th Cir. 1991) (discussing and quoting Michigan's statutory provisions automatic restoration of rights after a sentence of confinement).

The restoration of federal civil rights occurs in a similar manner: it occurs because the structure of the federal-state government established by the United States Constitution derives federal civil rights (the ones mentioned as key in *Cassidy* especially) from state law.

The Supreme Court characterizes the right to vote as a fundamental civil right, perhaps just above many other rights because of its connection to the protection of other rights:

> Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized. Almost a century ago [] the Court referred to the political franchise of voting as a fundamental political right, because preservative of all rights.

*Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964). Fundamental as the suffrage is, the structure of our constitution reveals that the Constitution refers to the states for

a determination of these important civil rights: as discussed above, the Constitution itself mandates that federal voting qualifications are measured solely by reference to state law. CONSTITUTION OF THE UNITED STATES, Article I, section 2, clause 1; *id.,* Amendment XVII. The Voting Rights Act of 1965 carries the Constitution's structure forward into statutory enactments to prevent discrimination in voting registration, but even that statute does not separately set forth any substantive qualifications. *See, e.g.*, 42 U.S.C. §1971(a)(1).[10]

With voting, when a federal conviction occurs, no provision of federal law ever causes a loss of that right; no provision of the United States Constitution prevents a person with a conviction from voting. Indeed, given the express textual provisions referring the matter to the states, a federal statute that purported to prevent felons from voting very likely would violate the provisions in Article I, section 2, clause 1 and Amendment XVII making voting qualifications in federal elections specifically dependent upon state law.

The structural argument advanced here draws some support from the *Slaughter-House Cases*, in which the United States Supreme Court recognized that

---

[10] The cited section provides: "All citizens of the United States *who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision*, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding." (Italics added.)

while the Fourteenth Amendment to the United States Constitution created a new category of citizenship, national citizenship, the amendment left intact the basic federal structure of the government of this country under which the basic civil rights of all citizens arise under and are controlled by state law. *Slaughter-House Cases*, 83 U.S. 36, 82 (1872). In the *Slaughter-House Cases*, the Court said:

> Under the pressure of all the excited feeling growing out of the war, our statesmen have still believed that the existence of the State with powers for domestic and local government, including the regulation of civil rights-the rights of person and of property-was essential to the perfect working of our complex form of government, though they have thought proper to impose additional limitations on the States, and to confer additional power on that of the Nation.

83 U.S. at 82.[11]

One of the defendants in *Beecham v. United States* advanced the argument that a state law restoration should be sufficient because Congress had not prescribed any statutory process for restoration of civil rights and at least one circuit court of appeals agreed with that argument; the Supreme Court responded that some states have no statutory procedure either. *Beecham*, 511 U.S. at 372-373. The *Beecham* discussion perhaps contains an internal contradiction due to having overlooked a basic verity: the structure of the United States Constitution and the wording of

---

[11] Some difficulty appears to exist in reconciling the concepts undergirding *Slaughter-House Cases* and those undergirding *Beecham v. United States*, because the kinds of rights mentioned in *Slaughter-House Cases* are not lost by a conviction. One avenue of reconciliation appears in this memorandum: to the extent federal civil rights of the type relevant to §921(a)(20) exist, the "restoration" of those rights will be measured by some action of a state.

relevant statutes with respect to basic civil rights weighs in favor of the conclusion that Congress has passed no statute because none is needed; substantive federal law looks to state law to make the determinations necessary for a restoration of civil rights, and when the state law procedure has been fulfilled, the only remaining question is whether the product of the process meets the substantive requirements to constitute a restoration under federal law.  As Billy York Walker has shown in this memorandum, the state law procedure he followed had the effect, under the structure of government established by the United States Constitution, of restoring his federal civil rights.

## VIII. Billy Walker specifically did not seek any "relief from disabilities" that would be barred by *Mullis v. United States*, 230 F.3d 215 (6th Cir. 2000) and *United States v. Bean*, 537 U.S. 71 (2002), but rather sought a declaration of restoration of civil rights.

The GCA provides an administrative method for disqualified persons to obtain "for relief from the disabilities imposed by Federal laws[.]"   18 U.S.C. §925(c).   The Attorney General of the United States promulgated regulations concerning the "relief" provisions, 27 C.F.R. §478.144, however, the Congress of the United States has barred funding of the office for many years.  *See Mullis v. United States*, 230 F.3d 215, 217 (6th Cir. 2000).  Various individuals have asserted that the lack of funding could be construed as *de facto* administrative exhaustion, however, this Court and other circuit courts of appeal rejected that argument.  *See id.* at 218.  In *United States v. Bean*, the Supreme Court determined that agency

inaction on a §925(c) request cannot be the basis for judicial review, affirming the result reached in *Mullis* and other cases. *United States v. Bean*, 537 U.S. 71, 78 (2002)

The language of the two statutory provisions shows the difference between their meaning:

> §921(a)(20):  Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms[.]

> §925(c):  A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Attorney General for relief from the disabilities imposed by Federal laws[.]

The two provisions speak in different words, excluding one category of persons from the ambit of the statute altogether (those whose civil rights have been restored) and making one included group eligible for relief (and, importantly, relief not connected to a civil rights restoration, as relief under §925(c) would have no impact on voting rights, service on a jury, or seeking and holding office).

Moreover, in the Firearm Owners Protection Act of 1986, which added the language now codified at §921(a)(20) and the also made a change to §925(c) by adding the judicial review provision for those persons denied "relief" from the operation of the GCA prohibitions, Congress used the civil rights restored

terminology in what now appears as §921(a)(20) and used the relief terminology in §925(c). Firearm Owners Protection Act, Pub. L. No. 99-308, §§101, 105, 100 Stat. 449, 449-450, 459 (1986). The choice of different terms for different sections of the statute shows a difference in the meaning for the two provisions, especially where those differences appear in the same act. As the Supreme Court has said:

> [W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. This is particularly true here, where subsections (b)(3)(B) and (f)(2) were enacted as part of a unified overhaul of judicial review procedures.

*Nken v. Holder*, 556 U.S. 418, 430-31 (2009) (quoting, in part, *INS v. Cardoza–Fonseca*, 480 U.S. 421, 432 (1987); internal quotation marks omitted).

The plain words used in the statutes reveal the "relief" provision to be wholly separate from the "exemption" clause that removes an individual from coverage by the GCA's prohibitions.

The present case does not seek "relief from the disabilities[,]" 18 U.S.C. §925(c); 27 C.F.R. §478.144, imposed by the GCA, but rather, guided by the plain language used in the statutory provisions seeks a declaration that federal law operates in such a way on the facts presented here as to bring Billy York Walker within the exemption from the GCA's disabilities (18 U.S.C. §921(a)(20)). Billy York Walker seeks only a declaration that he does not have any disabilities, he does not seek, and has not sought, "relief" from those disabilities despite their

existence. In his initial memorandum of law filed with his complaint, Billy York Walker stated specifically that he did not seek relief under 18 U.S.C. §925(c). (R. 1, Complaint, Attachment, Page ID#29-31.)

## CONCLUSION

Billy York Walker has taken all necessary action for the operation of federal law to restore his federal civil rights, the operation of federal law has restored his civil rights, and he seeks a judgment from this Court that he fits with the exemption clause of 18 U.S.C. §921(a)(20) and no longer has any firearms disabilities under the GCA arising from his prior conviction in this Court. The District Court erred when it granted the motion for judgment on the pleadings filed by the United States, and the decision of the District Court should be reversed. Further, judgment should be entered in favor of Billy York Walker in this Court, as the undisputed facts demonstrate his entitlement to the relief he seeks, and he requests that the Court grant the relief at this time.

Respectfully Submitted,

*Attorneys for Billy York Walker*:

WILKERSON GAULDIN HAYES JENKINS & DEDMON

By:     /s/William Lewis Jenkins Jr.
        William Lewis Jenkins Jr. (Tenn. Bar #017423)
        Electronic mail: ljenkins@tenn-law.com
        112 West Court Street, P.O. Bo 220
        Dyersburg, Tennessee 38025-0220
        Tel. No. 731.286.2401 / Fax No. 731.286.2294

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,974 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman font.

/s/ William Lewis Jenkins Jr.          Date:  11 August 2014
Signature of Counsel
W. Lewis Jenkins Jr.
Counsel for Billy York Walker

## CERTIFICATE OF SERVICE

I certify that on 11 August 2014, a copy of the document to which this certificate of service is attached was served upon the following person through the electronic noticing service of the Court's ECF system:  Gary A. Vanasek, Esq., Assistant United States Attorney, Suite 800, 167 N. Main Street, Memphis, TN 38103.

/s/ William Lewis Jenkins Jr.
Signature of Counsel
W. Lewis Jenkins Jr.
Counsel for Billy York Walker

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(g), Defendant-Appellant Billy York

Walker, designates the following district court documents as relevant:

| RECORD NO. | DESCRIPTION | PAGE ID# |
|---|---|---|
| R. 1 | Complaint | 1-35 |
| R.5 | Answer | 45-49 |
| R.15 | First Motion for Judgment on the Pleadings | 71-79 |
| R.17 | First Amendment to Complaint | 82-87 |
| R.18 | Motion for Summary Judgment | 88-90 |
| R.19 | LR 56.1 Statement of Facts | 91-101 |
| R.20 | Memorandum of Law | 102-133 |
| R.23 | Notice of Correction to Statement of Facts | 134-144 |
| R.24 | Notice of Correction to Memorandum of Law | 145-176 |
| R.27 | First Amended Complaint | 180-214 |
| R.31 | Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment | 267-276 |
| R.32 | Notice of Appeal | 277 |