RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0215p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BILLY YORK WALKER,

　　　　　　　　*Plaintiff-Appellant*,

　　　*v.*

UNITED STATES OF AMERICA,

　　　　　　　　*Defendant-Appellee*.

No. 14-5703

———————————

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 1:13-cv-01212—J. Daniel Breen, Chief District Judge.

Argued: January 13, 2015

Decided and Filed: September 1, 2015

Before: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** William Lewis Jenkins, Jr., WILKERSON GAULDIN HAYES JENKINS & DEDMON, Dyersburg, Tennessee, for Appellant. Gary A. Vanasek, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** William Lewis Jenkins, Jr., WILKERSON GAULDIN HAYES JENKINS & DEDMON, Dyersburg, Tennessee, for Appellant. Gary A. Vanasek, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

　　　ROGERS, J., delivered the opinion of the court in which SUHRHEINRICH, J., joined. CLAY, J. (pp. 15–23), delivered a separate dissenting opinion.

--------------------

# OPINION

--------------------

ROGERS, Circuit Judge.  Federal law generally bars both state-convicted and federally-convicted felons from possessing firearms, unless (among other conditions) their civil rights have been "restored."  The Supreme Court has held that whether a felon's civil rights have been restored must be determined under the law of the convicting jurisdiction.  *Beecham v. United States*, 411 U.S. 368 (1994).  In rejecting the argument that a state's restoration of the civil rights of a federal felon was sufficient to lift the disability under the federal statute, the Supreme Court avoided the arguably anomalous result that a convicted felon's federal firearm disability would depend on the state in which he was physically present when he possessed the firearm.  A federal statute was in place that provided a means for a felon to get his firearm disability lifted.  Since then, Congress has rendered inoperative the federal statutory provision directly addressing the lifting of the firearms disability based on a felony conviction.  Now Billy Walker, a federal felon residing in Tennessee who has had his civil rights fully restored under Tennessee law, asserts that his Tennessee restoration of rights, because of the federal law effects of that restoration, in conjunction with certain longstanding federal statutory and constitutional provisions, leads to the conclusion that federal law has restored his rights sufficient to lift the disability.  If so, the argument could have been made back when the Supreme Court decided *Beecham*, presumably leading to a different result in that very case.  That possibility, especially in light of Congress's subsequent legislation to limit the lifting of federal firearms disability for federal felons, should give us pause before holding that a state restoration of rights after all does result in a lifting of federal firearm disability.  Such a holding would raise intractable issues about which state's restoration of rights applies to a federal felon's possession of a firearm.  Although a lawyer-like argument can be made to that effect, in the end a careful reading of the federal statute does not lead to such a strange result.

Walker argues that the relevant civil rights for firearm-disability-lifting purposes are the right to vote, the right to serve on a jury, and the right to hold government office.  When these rights are restored at the state level, the argument goes, federal law in various ways permits the exercise of the same three civil rights at the federal level, thus meeting the federal statutory

standard.  The argument, however, works at best only for one of the three rights, and therefore is not sufficient to constitute a federal restoration of federal civil rights (plural) to warrant lifting the firearm disability.

The relevant facts are not in dispute.  In 1987, Walker was convicted on multiple non-violent felony charges in federal court located in Tennessee.  These convictions rendered him subject to the federal ban on possession of firearms by a convicted felon under the Gun Control Act of 1968.  *See* 18 U.S.C. §§ 921(a)(20), 922(g)(1).  As a result of his status as a felon, Walker also lost certain rights under the law of Tennessee, where he resided, including the right to vote, the right to hold state office, and the right to serve on a state jury; this had consequences for his federal law rights, including the right to serve on a federal jury.  Tenn. Code Ann. § 40-20-112 (loss of right to vote); § 40-20-114 (loss of right to hold public office); § 22-1-102 (loss of right to serve on a state jury); 28 U.S.C. § 1865 (loss of right to serve on a federal jury).

Recently, Walker set out to restore his civil rights and regain the right to possess firearms.  In June 2010, Walker obtained a Tennessee state court order ruling that he "is eligible to have all civil and citizenship rights restored, including, without limitation, the right to vote, the right to serve on a jury, and the right to hold an office trust," and ordering Walker's "civil and citizenship rights . . . restored pursuant to Tenn. Code Ann. § 40-29-105."  The same court issued a second order on March 22, 2012, confirming the restoration of rights in the prior order, and clarifying that Walker "shall have the explicit right to bear and possess firearms."

In January 2013, Walker attempted to purchase a firearm at Gander Mountain in Jackson, Tennessee, but was prevented from doing so.  When Walker appealed to the Tennessee Bureau of Investigation, he received an explanation that he was denied authorization because he was listed as a disqualified person in the background check database maintained by the Federal Bureau of Investigation.

Walker thereafter filed suit in the present action, seeking a declaratory judgment that his civil rights and his right to possess firearms have been restored in full under federal law.  The district court subsequently granted the government's motion for judgment on the pleadings and denied Walker's motion for summary judgment.  Walker appeals.

Walker was originally prevented from possessing firearms by 18 U.S.C. § 922(g), which prohibits "any person . . . who has been convicted . . . of a crime punishable by imprisonment for a term exceeding one year . . . [from] possess[ing] . . . any firearm or ammunition."  Walker would obviously fall under this statute, except that, under 18 U.S.C. § 921(a)(20), "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter," subject to conditions not at issue here.  Walker argues that because his civil rights have been restored under Tennessee law, they have been restored for purposes of this statute.

Because Walker was convicted in federal court, the restoration of his rights under Tennessee law is not in itself enough.  Presented with factual circumstances materially indistinguishable from the present case—federal felons whose rights had been restored in the states where they resided—the Supreme Court held that "whether a person has had civil rights restored . . . is governed by the law of the convicting jurisdiction."  *Beecham*, 511 U.S. at 371. The Court reasoned that the statute expressly provided that what constitutes a conviction is "determined in accordance with the law of the jurisdiction in which the proceedings were held," and that the exemption clause provides that a conviction for which civil rights have been restored "shall not be considered a conviction."  *Id.*  The Court noted that a different conclusion would require the Court "to come up with a special choice-of-law principle for the exemption clause." *Id*.  (One of the two district courts below in *Beecham* had applied the law of the state in which the federal convicting court had sat, while the other had applied the law of the state in which felon had possessed the firearm.  *Id.* at 370.)  The Court rejected an argument that Congress would not have wanted the civil rights restoration exemption to be determined by federal law because there was no federal procedure of restoring civil rights to a federal felon.  The Court rejected this argument because Congress did not intend that felons convicted in every jurisdiction have access to all the procedures (pardon, expungement, set-aside, and civil rights restoration) specified in the exemption.  *Id.* at 372–73.  Thus the Court did not need to reach the argument *in favor of the felons* that a federal felon cannot have his civil rights restored under federal law.  *Id.* at 373 n.*.

In determining whether Walker's "civil rights" have been restored, precedent indicates that we should look to three civil rights in particular: "the rights to vote, to serve on a jury and to

seek and hold public office." *United States v. Cassidy*, 899 F.2d 543, 550 (6th Cir. 1990); *see Logan v. United States*, 552 U.S. 23, 28 (2007). Along with the parties, moreover, we assume that in this context the relevant rights are to vote in federal elections, to serve on federal court juries, and to seek and hold federal office. At most one of these has been "restored" under federal law, and that is not enough.

First, we assume for purposes of this appeal that Walker's right to serve on a federal jury has been restored under federal law. Under 28 U.S.C. § 1865, the statute defining eligibility for federal jury service, a person meeting other statutory requirements can serve on a federal jury "unless he . . . has been convicted in a State or Federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored." 28 U.S.C. § 1865(b)(5). Assuming that restoration of civil rights in this statutory context refers to the restoration of civil rights in one's state of residence, Walker has had his right to serve on a federal jury restored under federal law. Walker's conviction placed him within the exclusion from federal jury service in the statute, and the restoration of his civil rights under Tennessee law arguably placed him within the exception to the exclusion. Federal law explicitly provides a particular condition under which felons may, in spite of their convictions, serve on federal juries, and Walker has, it appears, met that condition. It thus appears that Walker has had his right to serve on federal juries restored under federal law, albeit by cross-reference to state law. Of course if the language of § 1865(b)(5) were limited in the way that similar language in § 921(a)(20) was limited in *Beecham*, the statute might be read to mean "and his civil rights have not been restored *by the convicting jurisdiction*." In that case, we might be faced with interpreting circular provisions: whether a civil right is restored under federal law would depend (at least in part) on whether the civil right was restored under federal law. We need not resolve this issue, however, as the other two relevant rights have not been "restored," and one alone is not enough.

Second, Walker's right to seek and hold public office has not been restored, because he was never deprived of that right to begin with. Neither Congress nor the states can add to the constitutional qualifications for holding federal elective office. *Powell v. McCormack*, 395 U.S. 486 (1969); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995). Because the constitutional qualifications make no mention of convictions, under federal law, Walker could always run for

and hold federal public office. Walker's conviction also had no effect on how federal law regulated his right to run for and hold state public office. The Supreme Court held in the context of the Armed Career Criminal Act that "an offender who lost no civil rights" has not had his civil rights restored for purposes of § 921(a)(20). *Logan*, 552 U.S. at 37. Having a thing "restored," as that word is used in § 921(a)(20), implies that that thing was first lost. *See Logan*, 552 U.S. at 31. Thus Walker's right under federal law to run for federal elected office was never restored because he never lost it.

Third, Walker's right to vote in federal elections was not restored under federal law in the sense that the convicting jurisdiction (i.e., the United States), either by across-the-board legislation or by individual adjudication, determined that such a right should be returned to him. The best reading of § 921(a)(20) is that for a civil right to be restored, it must be restored as a result of an evaluation by the convicting jurisdiction of what the consequences of the conviction ought to be. That is not the case here. The provisions of federal law on which Walker relies provide general rules for voting rights that apply to felons to the same extent as to anyone else; the federal scheme does not address Walker's conviction—or convictions in general—at all, and so it does not effect a restoration of Walker's right to vote for purposes of § 921(a)(20).

The provisions of federal law on which Walker relies are the constitutional provisions relating to voting in House and Senate elections, both of which provide (with minor and inconsequential style variations) that "[t]he electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislature[s]." U.S. Const. art. I § 2; *id.* amend. XVII. This means that under federal law a person has the right to vote in elections for Congress so long as the state where that person resides permits him to vote in state legislative elections. *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Thus Walker lost his federal right to vote in congressional elections when he was convicted because Tennessee, his state of residence, prohibited him from voting in Tennessee's legislative elections. When Tennessee lifted that prohibition, Walker regained his federal right. These provisions of federal law are indifferent as to Walker's status as a felon and even as to the reasons that Tennessee first denied and then restored Walker's state legislative voting rights. Instead, Walker's right to vote under federal law turns entirely on whether or not Tennessee permits him to vote.

Walker's right to vote has not been restored under federal law, because the text of § 921(a)(20) must be read to require that the convicting jurisdiction's civil rights scheme address an individual's conviction in "restoring" that individual's civil rights. Otherwise it is but an exercise of sterile logic to say that the federal law "restored" the right to vote. This gloss, moreover, is supported by the text. Strictly speaking, the question posed by § 921(a)(20) is not whether Walker's civil rights were restored, but whether Walker's "*conviction* [was one] . . . *for which* . . . [he] has had civil rights restored.*" 18 U.S.C. § 921(a)(20) (emphasis added). Having civil rights restored is a property not of the felon, as one might intuitively expect, but of the conviction. *See Beecham*, 511 U.S. at 371. If the convicting jurisdiction grants a felon the right to vote without in any way considering his conviction or even convictions in general, then the felon's right to vote is not restored *for* the conviction. Rather, "for which" implies that, for a civil right to be restored pursuant to the statute, the convicting jurisdiction must grant the felon the right to vote after some determination that the felon's conviction ought no longer to prevent the felon from exercising the civil right.

Even if this requirement that the scheme restoring rights address the conviction is not the only plausible reading of "conviction . . . for which . . . [he] has had civil rights restored," it finds support in the broader context in which that language appears. Section 921(a)(20) provides alternatives to the restoration of civil rights that all address an individual's conviction: expunging a conviction, setting it aside, and pardon. 28 U.S.C. § 921(a)(20). These are all legal acts that reflect a judgment by some state actor about whether particular consequences are appropriate responses to the felon's crime. While these are all generally individualized judgments and restoration of civil rights need not be, it is reasonable to assume that Congress intended restoration of civil rights to be of a kind with its partners in the list in reflecting a determination by the convicting jurisdiction that particular consequences of a conviction ought no longer to be imposed. If, as this list suggests, Congress intended to use the convicting jurisdiction's determination as a proxy for whether a felon is sufficiently trustworthy to be allowed to possess firearms, the convicting jurisdiction's determination must somehow take the felon's conviction into account to be meaningful.

This reading of the statute is supported by language in *Logan*, 552 U.S. 23, suggesting that when a convicting jurisdiction restores civil rights it grants a degree of forgiveness to the

offender.  In that case, Logan was convicted of being a felon in possession of a firearm and sentenced to the mandatory minimum 15-year term because he had three state convictions that qualified as felonies under 28 U.S.C. § 921(a)(20).  *Id.* at 26.  However, under the law of Wisconsin, the jurisdiction where those convictions took place, the convictions for which Logan was convicted "at no time deprived the offender of civil rights."  *Id.*  Logan therefore claimed that his rights had been restored under Wisconsin law for purposes of § 921(a)(20), rendering the mandatory minimum 15-year sentence inapplicable.  *Id.*  The Supreme Court disagreed, holding that never losing one's civil rights is not the same as having one's civil rights restored.  *Id.*  The Court noted the context of the "civil rights restored" language: "In § 921(a)(20), the words 'civil rights restored' appear in the company of the words 'expunged,' 'set aside,' and 'pardoned.' Each term describes a measure by which the government relieves an offender of some or all of the consequences of his conviction."  *Id.* at 32.  Thus, in requiring some affirmative government act, the Court described the restoration of civil rights as a government act that "extend[s] to an offender a measure of forgiveness," and noted that Logan, and other offenders never deprived of their civil rights, receive no "token of forgiveness from the government."  *Id.* at 26, 32. Forgiveness always involves a consideration of the wrong committed.  Indeed, without such a consideration, there would be little reason for Congress to defer to the convicting jurisdiction's decision to restore civil rights to the convicted individual.  *See id.* at 37.  If a decision not to deprive the convicted individual of civil rights in the first place is not sufficient in Congress's eyes for a restoration, a decision to deprive and then grant civil rights for reasons only incidentally connected to the conviction should also be insufficient.

There is no token of forgiveness for Walker in the federal law's treatment of his right to vote.  That Walker regained the right to vote under federal law reflects no judgment in federal law regarding his conviction in particular or the voting rights of felons in general.  Instead, Walker's right to vote hinges entirely on a contingent consequence of his conviction: his loss of voting rights under Tennessee law as a Tennessee resident with a felony conviction.  Walker would have retained the right to vote had he resided in a state that permitted felons to vote.[1]  In contrast to the statute governing federal jury service, this deference to state rules is not part of a

_____

[1]Currently, Maine and Vermont permit resident felons to vote, even while they are incarcerated.  *See* Me. Rev. Stat. 21-A, § 112(14); Vt. Stat. Ann. 17, § 2121.

federal scheme specifically addressing the rights of convicted felons.    *Cf.* 28 U.S.C. § 1865(b)(5).    In the case of jury service, federal law asks first whether Walker is a felon and then whether Tennessee has restored his rights.    When it comes to voting, however, federal law considers only whether Tennessee permits him to vote and does not in any way consider his felony conviction.[2]    Walker's federal felony convictions are therefore not ones for which his right to vote has been restored under federal law, and indeed, he was never deprived of this right in the sense necessary for it to be able to be restored.

This conclusion is fully consistent with *Caron*, 524 U.S. at 313, under which civil rights can be restored "by operation of law" rather than by an individual determination.    In that case, Caron, a three-time Massachusetts felon convicted of possessing firearms, argued at sentencing and on appeal that his civil rights had been restored under Massachusetts law and therefore his Massachusetts convictions were not predicate felonies for the ACCA's mandatory minimum 15-year sentence.    Caron had received no individual restoration; instead, his argument relied on the fact that Massachusetts law does not deprive felons of the right to vote, permits them to run for office upon completion of their sentences, and permits them to serve on juries seven years after their convictions.    *United States v. Caron*, 77 F.3d 1, 2 (1st Cir. 1996) (en banc). Eventually, the en banc First Circuit held that the restoration of civil rights for purposes of § 921(a)(20) does not require individualized procedures.    *Id.* at 5.    The Supreme Court denied certiorari, and, when it decided a separate question on a subsequent appeal, confirmed this conclusion and noted the unanimous agreement of the Circuits that considered the issue. 524 U.S. at 313–14.    This is consistent with *Logan*.    Massachusetts' scheme for granting civil rights to felons functions as a token of forgiveness in the sense that it reflects a judgment about whether felons, as a general class, ought to have particular civil rights returned to them after enough time has passed.    The scheme is thus distinguishable from the constitutional provisions Walker relies on, which articulate the scope of a generalized voting right applicable to all citizens and do not reflect any judgment regarding the consequences of criminal convictions in particular.    Forgiveness, under this interpretation of *Logan*, does not require an individualized

---

[2]This analysis does not necessarily require that a jurisdiction's scheme address a conviction explicitly.    For example, it is possible, although we do not consider the question here, that a statute that uses general language to repeal a prohibition on felons voting would restore the voting rights of the felons affected.    In that case, the legislature's act might be understood to address the felons' convictions by repealing the statute that had previously addressed the convictions.

pardon, but it does require consideration of the felon's conviction and willingness to lighten the burdens imposed as a consequence of it.

Thus Walker appears to have had at most one of the *Cassidy* civil rights restored, a second was not restored because it was never lost, and a third was not restored within a fair reading of § 921(a)(20). This is not sufficient. First, the language of the statute refers to having multiple "civil rights" restored, not just one civil right. On the most natural interpretation of the statutory language, having only one civil right restored is insufficient. Second, even when other civil rights cannot be restored because they were not lost, having just one civil right restored is not functionally equivalent to having multiple restored. This is because the statute, as interpreted in *Logan*, defers to acts of forgiveness or rehabilitation by the convicting jurisdiction. *Id.* at 37. The restoration of a single civil right, as opposed to multiple civil rights, is insufficiently significant to suggest that Congress intended to defer to that also.

The restoration of civil rights as a whole reflects more trust than the restoration of a single civil right. Restoring a single civil right—the right to serve on a jury, for example—may be a decision guided primarily by administrative practicalities or by considerations unique to the context in which that right is exercised. Such a decision lacks both the symbolic and actual significance of a restoration of multiple civil rights, which suggests that a felon can function as a normal citizen in more than one institutional context. The judgment that a single civil right ought to be restored thus does not reflect the same degree of forgiveness as the restoration of multiple civil rights, and so it is not sufficient for purposes of § 921(a)(20).

Because Walker has had at most one of the *Cassidy* civil rights restored under federal law for purposes of § 921(a)(20), his felony conviction is not one "for which . . . [he] has had civil rights restored," § 921(a)(20), and so the firearms prohibition of § 922(g) still applies to him.

Acceptance of Walker's argument, on the other hand, would require us to conclude that the Supreme Court simply did not look at the right laws in *Beecham*, when it held that a state restoration of civil rights was not sufficient to lift the firearm disability. The constitutional provisions regarding the right to run for federal office and to vote in federal elections referred to state law just as much in 1994 as now. And the statutory provision regarding federal jury duty was not materially different in 1994 from what it is today. *See United States v. Arce*, 997 F.2d

1123, 1127 (5th Cir. 1993) (quoting—and upholding the constitutionality of—§ 1865(b)(5)). Although we could say that a state restoration of civil rights is also a federal restoration because of these provisions, the Supreme Court could easily have said the same—if true—in 1994. We are not so bold as to draw a conclusion that the Supreme Court was simply misled to look at the wrong law. Walker's proposed interpretation would produce a practical result very similar to the one that the Supreme Court rejected in *Beecham*, albeit by a different legal route. In *Beecham*, the Supreme Court rejected circuit court interpretations of § 921(a)(20) that would have predicated the restoration of a federal felon's civil rights on their restoration under state law. *Beecham*, 511 U.S. at 370–71. Walker's argument would indirectly predicate a federal felon's civil rights on their restoration under state law. While this argument was not presented to the Court in *Beecham*, the Court was obviously aware of the federal law on voting and jury service on which Walker's argument rests. *See id.* at 373 n.*.

In the starred footnote in *Beecham*,[3] the Court indicated that it was not necessary to reach an argument *that would support the felon* that there was *no* available federal restoration of civil rights. (The Ninth Circuit had previously reasoned that the absence of a federal restoration indicated that Congress intended the state restoration to be sufficient. *Id.* at 372–73.) The Court, as indicated above, did not reach the issue because the Court reasoned that, under the statute, the civil rights of a federal convict had to be restored under federal law for the exemption to apply regardless of whether the federal government provided for such a restoration. Apart from a citation of the federal provisions relied upon by Walker for a conclusion opposite to the one that was perceived to favor Beecham, nothing in the footnote suggests that a state restoration of state civil rights would by virtue of those federal provisions result in a federal restoration of rights.

---

[3] The footnote in full reads:

We express no opinion on whether a federal felon cannot have his civil rights restored under federal law. This is a complicated question, one which involves the interpretation of the federal law relating to federal civil rights, see U.S. Const., Art. I, § 2, cl. 1 (right to vote for Representatives); U.S. Const., Amdt. XVII (right to vote for Senators); 28 U.S.C. § 1865 (right to serve on a jury); consideration of the possible relevance of 18 U.S.C. § 925(c) (1988 ed., Supp. IV), which allows the Secretary of the Treasury to grant relief from the disability imposed by § 922(g); and the determination whether civil rights must be restored by an affirmative act of a Government official, *see United States v. Ramos*, 961 F.2d 1003, 1008 (CA1), cert. denied, 506 U.S. 934, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992), or whether they may be restored automatically by operation of law, *see United States v. Hall*, 20 F.3d 1066 (CA10 1994). We do not address these matters today.

*Id.* n.*.

The Government in *Beecham* moreover relied upon the difficulties that would occur if a state restoration of rights lifted the federal firearm disability, difficulties that would apply just as strongly if Walker's argument is adopted:

> The interpretation of the statute proposed by petitioners would lead to intractable problems of construction. Petitioners do not suggest which State's law should be consulted to determine whether a federal felony is to be given continuing effect, and there is nothing in the statute that gives any hint of which State's law should control — the State of the defendant's residence, the State of the defendant's prior federal felony conviction, the State where the defendant commits the new firearms offense, or some other State. Since that question would be such an obvious one if state law were intended to control the construction of federal felonies, the fact that the statute provides no answer casts serious doubt on petitioners' construction.

Brief for Appellant, *Beecham v. United States*, 511 U.S. 368 (1994) (No. 93-445), 1994 WL 96876 at *8.

> The Government elaborated on this concern as follows:

> If the term "restoration of civil rights" is not understood to refer to a restoration by the convicting jurisdiction, it would mean that if State A restored a defendant's civil rights following his conviction in State B, the State B conviction would no longer qualify as a conviction under federal law. That would be so even if State B regarded its own conviction as still perfectly valid and still sufficient to bar the defendant from possessing firearms in that State. Carried to its logical end, petitioners' interpretation of Section 921(a)(20) means that the State of Wyoming could render convictions from every other State and from federal courts unusable as "convictions" under the Gun Control Act if Wyoming law restored civil rights to persons convicted in other jurisdictions as soon as they were released from custody. . . .

> [Petitioners] insist (Br. 12-13) that there is no textual basis for construing the phrase "restoration of civil rights" as limited to the convicting jurisdiction. But if the restoration of civil rights is not limited to the convicting jurisdiction, there is no textual basis for deciding what other jurisdiction's law to consult in determining whether a restoration of civil rights has the effect of removing the federal firearms disability. To suggest that the "restoring" jurisdiction should be the State in which the federal conviction was obtained, or the State in which the defendant was residing when he committed the subsequent federal firearms violation, or the State in which the defendant was charged with the federal firearms violation, requires a complete departure from the text of the statute to which petitioners claim strict allegiance.

*Id.* at *11–12.

The Supreme Court adverted to these arguments briefly in its opinion, but noted that applying federal law where the conviction is federal would avoid the need to come up with a special choice of law rule. *Beecham*, 511 U.S. at 371. But accepting Walker's argument in this case would return us to the very quandary that the Government raised in *Beecham* and that the Supreme Court thought it avoided: which state's restoration is the operative one, and does it apply nationally?

In addition, Congress's subsequent treatment of 28 U.S.C. § 925(c), a separate avenue for felons to regain their gun possession rights, lends support to a limited interpretation of "restoration." Section 925(c) provides a mechanism for felons convicted in any jurisdiction to petition to the Attorney General (or, in prior versions of the law, the Secretary of the Treasury) for a restoration of the right to possess firearms. The Attorney General (and previously the Secretary of the Treasury) has delegated this responsibility to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). Since 1992, however, Congress has, in annual appropriations bills, prohibited the ATF from acting on such petitions. *See Mullis v. United States*, 230 F.3d 215, 217 (6th Cir. 2000). The legislative histories of these appropriations provisions make it clear that Congress believed that "those who commit felonies should not be allowed to have their right to own a firearm restored." H.R. Rep. No. 104-183, at 15 (1995); *see* 142 Cong. Rec. S. 12164 (Oct. 19, 1996) (statement of Sen. Simon); *Mullis*, 230 F.3d at 220 & n.3.

This subsequent intent to prevent felons from possessing firearms suggests that Congress did not view § 921(a)(20) as offering felons who have not been rehabilitated a way to regain firearms rights. Of course these appropriations measures blocking § 925(c) cannot entirely prevent felons from having their firearms rights restored because they could still obtain a pardon, expungement, or restoration of civil rights from the convicting jurisdiction under § 921(a)(20). The appropriations measures do not explicitly address that portion of the statute. But the fact that Congress broadly intended to prevent felons from possessing firearms and, guided by that intent, blocked implementation of § 925(c) without mentioning § 921(a)(20) suggests that Congress did not view § 921(a)(20) as a remaining avenue for non-rehabilitated felons to regain their right to possess firearms. If § 921(a)(20) restored firearms rights to felons who had lost and regained civil rights without any consideration of their crimes by the convicting jurisdiction, then

Congress's failure to address this provision would be difficult to explain in light of Congress's stated general intent to prevent felons from possessing firearms.

      For the foregoing reasons, the judgment of the district court is affirmed.

—————————————

**DISSENT**

—————————————

CLAY, Circuit Judge, dissenting.   This case presents the question of whether the undisputed restoration of Billy York Walker's civil rights under Tennessee law has the effect, by operation of federal law, of restoring his federal civil rights so that he is exempt from the federal firearms ban applicable to felons pursuant to 18 U.S.C. § 921(a)(20).   Contrary to the majority, I believe that both binding precedent and the nature of our federal system require a conclusion that Walker's federal civil rights have been restored within the meaning of § 921(a)(20). I therefore respectfully dissent.

**DISCUSSION**

Under § 921(a)(20), a person who has been convicted of a felony may nonetheless become exempt from the federal ban on weapons and ammunition possession if that person's civil rights have been restored.   In relevant part, that provision states:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.   Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter[.]

§ 921(a)(20).   The first sentence of this provision is referred to as the "choice of law clause," and the second sentence is sometimes called the "exemption clause," as it exempts certain convictions from the application of the Gun Control Act.   *See, e.g.*, *Beecham v. United States*, 511 U.S. 368, 369 (1994).   Walker claims the protection of the exemption clause on the grounds that his civil rights have been restored.

Though this Court's task in evaluating Walker's claim is essentially one of statutory interpretation, we do not write on a blank slate.   Binding precedent prescribes the test: we must evaluate whether Walker's federal civil rights—the right to vote, the right to seek and hold office, and the right to serve on juries—have been restored according to federal law.   *Beecham v. United States*, 511 U.S. 368, 371-74 (1994) (requiring that restoration be determined according to the law of the convicting jurisdiction); *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir.

1990) (identifying the three dispositive rights).  Additionally, the Supreme Court has settled that the restoration of rights under § 921(a)(20) may be accomplished by operation of law, absent any affirmative act of restoration or particularized decision with regard to an individual felon. *Caron v. United States*, 524 U.S. 308, 313 (1998).  Finally, despite the majority's attempt to suggest otherwise, the Supreme Court has adopted a "plain-meaning" interpretation of the restoration of civil rights, in recognition that the word "restore" means simply "'to give back something that had been taken away.'"  *Logan v. United States*, 552 U.S. 23, 31 (2007) (quoting with approval *United States v. Logan*, 453 F.3d 804, 805 (7th Cir. 2006)); *see also id.* at n.3 (reviewing dictionary definitions).  Faithful application of these precedents, combined with respect for our federal constitutional system, compel a conclusion that Walker's civil rights have been restored under federal law and that he is therefore no longer subject to the firearms prohibition.

## A.  The Issue Reserved in *Beecham*

The Supreme Court granted certiorari in *Beecham* to resolve a circuit split about whether the choice of law clause in § 921(a)(20) applied to the post-conviction events (*i.e.*, pardons, expungement, and restoration of rights) listed in the exemption clause.  511 U.S. at 370-71.  The Eighth and Ninth Circuits had previously held that the choice of law clause applied only to the conviction itself, not to post-conviction events—leaving state law as the governing standard for the restoration of civil rights.  *United States v. Edwards*, 946 F.2d 1347 (8th Cir. 1991); *United States v. Geyler*, 932 F.2d 1330, 1333-34 (9th Cir. 1991).  The Fourth Circuit, in the two decisions reviewed by the Court in *Beecham*, reached the opposite result and rejected the proposition that state law governed the restoration of a federal felon's civil rights.  *United States v. Beecham*, 993 F.2d 1539 (4th Cir. 1993) (Table); *United States v. Jones*, 993 F.2d 1131 (4th Cir. 1993).  The Supreme Court resolved the split in favor of the position taken by the Fourth Circuit, holding that whether a felon's civil rights have been restored "is governed by the law of the convicting jurisdiction."  511 U.S. at 371.  Thus, for those convicted of federal felonies, courts "must look to whether [their] civil rights were restored under federal law."  *Id.*

The Supreme Court stopped at this holding and on that basis affirmed the Fourth Circuit. Neither the Supreme Court nor the Fourth Circuit addressed how federal law applies to the question of whether a federal felon's civil rights had been restored—an issue that had not been

raised or briefed by the parties.  The Supreme Court acknowledged the omission and expressly reserved the question of whether a federal felon's civil rights may be restored under federal law, writing in footnote * (hereinafter "the *Beecham* footnote"):

> This is a complicated question, one which involves the interpretation of the federal law relating to federal civil rights, *see* U.S. Const., Art. I, § 2, cl 1 (right to vote for Representatives); U.S. Const., Amdt. XVII (right to vote for Senators); 28 U.S.C. § 1865 (right to serve on a jury); consideration of the possible relevance of 18 U.S.C § 925(c) (1988 ed., Supp. IV), which allows the Secretary of the Treasury to grant relief from the disability imposed by § 922(g); and the determination whether civil rights must be restored by an affirmative act of a Government Official, *see United States v. Ramos*, 961 F.2d 1003, 1008 (CA1), cert. denied, 506 U.S. 934, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992), or whether they may be restored automatically by operation of law, *see United States v. Hall*, 20 F.3d 1066 (CA10 1994). We do not address these matters today.

511 U.S. at 373 n.*.

Both the government and the district court contend that *Beecham* forecloses Walker's claim because the opinion addressed substantially identical facts—federal felons whose rights were restored under state law—and yet in *Beecham* the Court ultimately rejected the felons' arguments that they were not subject to the federal firearm disability.  The majority adopts a version of this argument by emphasizing that the Supreme Court could have reached the issues in the footnote, and suggests that the Court's failure to do so is tantamount to a rejection of Walker's claim.

Contrary to the majority's argument, it is clear that *Beecham* cannot be characterized as foreclosing a legal argument that it expressly declined to reach.  Moreover, the Court's reticence in this regard was perfectly understandable, and even to be expected.  Of the several complex legal questions identified in the *Beecham* footnote, only the "possible relevance" of § 925(c) had received any attention—and even that attention was fleeting—in the parties' briefing.  The Supreme Court is of course free to disregard arguments not raised in the lower courts or advanced by the parties before it.  *See, e.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2776 (2014) ("We do not generally entertain arguments that were not raised below and are not advanced in this Court by any party."); *Bell v. Wolfish*, 441 U.S. 520, 531 n.13 (1979) (declining to reach argument not passed on by the lower courts or urged by the parties); *Knetsch v. United*

*States*, 364 U.S. 361, 370 (1960) (same).  It is simply unremarkable that, in the exercise of judicial prudence, the Court chose to leave the issues identified by the footnote for another day.

Now, more than a decade after *Beecham* and squarely presented with a claim that a felon's civil rights have been restored under federal law, we have the benefit of subsequent precedent that provides clear guidance regarding the questions identified in the *Beecham* footnote.  We know that a felon's civil rights may be restored by operation of law, without any affirmative act of restoration or case-by-case decisionmaking by a government agency or official.  *Caron*, 524 U.S. at 313.  Additionally, the Sixth Circuit has identified the dispositive civil rights which must be restored in order for the exclusion to apply: "the right to vote, the right to seek and hold public office and the right to serve on a jury."[41]  *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir. 1990); *see also Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999) (closely examining Michigan law to determine that the petitioner was entitled to serve on a jury before concluding that his civil rights were indeed restored).  A direct application of these principles in this case establishes that Walker's federal civil rights have been restored.  The majority's efforts to avoid this result are strained and unconvincing.

## B.  Restoration of Walker's Federal Civil Rights

As the majority notes, Walker's right to seek and hold federal office was never lost, and therefore has not been "restored."  *See Logan*, 552 U.S. at 31; *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995); *Powell v. McCormack*, 395 U.S. 486 (1969).  That leaves two rights to consider—the right to serve on a federal jury and the right to vote in federal elections.  Both rights have been "restored" to Walker according to "the word's ordinary meaning" of returning something that had previously been taken away.  *See Logan*, 552 U.S. at 31 & n.3.

### 1.  The Right to Serve on Federal Juries

The majority announces that it will "assume" for purposes of this case that Walker's federal right to serve on a jury has been restored pursuant to 28 U.S.C. § 1865(b)(5).  Maj. Op. at

---

[1]The Supreme Court has implicitly approved relying on this triad of rights to test whether a felon's civil rights have been restored. *See Logan*, 552 U.S. at 28 ("While § 921(a)(20) does not define the term 'civil rights,' courts have held, and petitioner agrees, that the civil rights relevant under the above-quoted provision are the rights to vote, hold office, and serve on a jury."); *Caron*, 524 U.S. at 316 (1998) ("Restoration of the right to vote, the right to hold office, and the right to sit on a jury turns on so many complexities and nuances that state law is the most convenient source for definition.").

5.  The majority's squeamishness on this issue is difficult to understand—the majority identifies no reasonable alternative interpretation of § 1865 which would support any other conclusion, and it is impossible to identify what more could be required for Walker to meet that standard.

The federal statute provides that a person shall be deemed "qualified to serve on grand and petit juries in the district court *unless* he . . . has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year *and his civil rights have not been restored*."  § 1865(b)(5) (emphasis added).  Because this language is nearly identical to the language in § 921(a)(20), the three civil rights identified in *Cassidy*—the right to vote, to hold office, and to serve on a jury—may properly be considered here as well.  *See Cassidy*, 899 F.2d at 549; *see also United States v. Green*, 532 F. Supp. 2d 211, 212 (D. Mass. 2005) (holding that the term "civil rights" in § 1865 "plainly involves the right to vote, to serve on juries, to run for office") (citing *Cassidy*, 899 F.2d at 549).

If the measuring stick is state law—after all, 28 U.S.C. § 1865(b)(5) does not contain a choice of law clause like the one in 18 U.S.C. § 921(a)(20)—then it is plain that Walker's civil rights have been restored and he may again serve on a federal jury.  The Tennessee state court order obtained by Walker restored to him all "civil and citizenship rights," specifically including "the right to vote, the right to serve on a jury, and the right to hold an office of public trust."  (R. 1-1 at PageID 9-10.)  Tennessee courts are authorized to restore "full rights of citizenship" under the procedure outlined in Tenn. Code Ann. §§ 40-29-101 to 40-29-105, and there is no dispute that the court-ordered restoration of Walker's state civil rights was valid.  *See May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (classing "serving as a juror" among the "rights of citizenship" affected by a conviction); Tenn. Code Ann. § 22-1-102 (providing that convicted felons lose their right to serve on a jury); *State v. Black*, 2002 WL 1364043, *11-12 (Tenn. Ct. App. 2002) (affirming the restoration under § 40-29-105 of the petitioner's right to vote); *Bryant v. Moore*, 279 S.W.2d 517 (Tenn. 1955) (holding that the right to seek and hold public office was encompassed in the restoration of rights under substantially similar prior statutory language).

To the extent Walker's federal civil rights are relevant to § 1865(b)(5), his federal right to vote has been restored by operation of law as a result of the reinstatement of his voting rights under state law,  U.S. Const. art. I, § 2, cl. 1; *id*. amend. XVII, and his right to seek and hold federal office is, as discussed above, unaffected by his felony conviction.  Walker has thus met

any conceivable requirement for the restoration of his right to serve on a federal jury. Applying the same plain-meaning interpretation that the Supreme Court gave the parallel provision in §921(a)(20), the right "had been taken away" from him as a consequence of his felony conviction under § 1865(b)(5), and it has been "give[n] back" under the terms of the same provision as a consequence of the restoration of his civil rights under state law. *See Logan*, 552 U.S. at 31 & n. 3.

### 2. The Right to Vote in Federal Elections

The majority acknowledges that, by virtue of the restoration of his right to vote under Tennessee law, Walker has regained his right to vote in federal elections. *See* U.S. Const. art. I, § 2, cl. 1; *id.* amend. XVII (adopting state law qualifications for the right to vote in federal elections). This result flows from the constitutional design of our federal system: "[The states] define who are to vote for the popular branch of their own legislature, and the constitution of the United States says the same persons shall vote for members of congress in that state. It adopts the qualification thus furnished as the qualification of its own electors for members of congress." *Ex parte Yarbrough*, 110 U.S. 651, 663 (1884); *see also Gray v. Sanders*, 372 U.S. 368, 379 (1963) ("States can within limits specify the qualifications of voters in both state and federal elections; the Constitution indeed makes voters' qualifications rest on state law even in federal elections."). Although the right to vote in federal elections incorporates voter qualifications set by state law, the right is indisputably a *federal* civil right, with "its foundation in the Constitution of the United States." *Wiley v. Sinkler*, 179 U.S. 58, 62-64 (1900); *see also Wesberry v. Sanders*, 376 U.S. 1, 17 (1964); *United States v. Classic*, 313 U.S. 299, 310, 314-15 (1941).

The majority does not dispute that Walker lost his right to vote under Tennessee law as a consequence of his federal felony conviction. *See* Tenn. Code Ann. §§ 2-2-102, 40-20-112, 40-29-201. By operation of federal law, the loss of Walker's state voting rights resulted in the loss of his federal voting rights. U.S. Const. art. 1, § 2, cl. 1; *id.* amend. XVII. Nor does the majority dispute that, by virtue of those same federal constitutional provisions, the restoration of Walker's right to vote under state law has resulted in the reinstatement of his right to vote in federal elections. *Id.*; *see* Tenn. Code Ann. §§ 40-29-101, 40-29-105(b)(1), (b)(6) & (b)(7) (authorizing the reinstatement of citizenship rights, including the right to vote); *see also State v. Johnson*, 79 S.W.3d 522, 527 (Tenn. 2002) (discussing the restoration of rights scheme created by

Tennessee statutes). These realities satisfy the plain meaning of the restoration of civil rights clause under § 921(a)(20): Walker's right to vote in federal elections, secured to him by nothing less than the Constitution of the United States, was first taken away as a consequence of his felony, then subsequently reinstated under federal law which, by constitutional design, gives effect to the state law restoration of voting rights. *Logan*, 552 U.S. at 31 & n.3; *see also Caron*, 524 U.S. at 313 (holding that civil rights may be restored by operation of law alone). Walker's federal civil right to vote has been "restored" within the common sense, ordinary meaning of the term.

The majority takes the position that Walker's federal civil right to vote has not been restored within what it terms a "fair reading" of § 921(a)(20). Maj. Op. at 10. This "fair reading" has one precarious source: the Supreme Court's observation in *Logan* that the restoration of civil rights, like expungement and pardon, "extend[s] to an offender a measure of forgiveness," while a felon whose civil rights were never lost "is simply left alone" and "receives no status-altering dispensation, no token of forgiveness from the government." 552 U.S. at 26, 31. Seizing on the concept of a "token of forgiveness," the majority insists that the law reinstating Walker's federal right to vote must do so out of an explicit federal judgment either "regarding his conviction in particular or the voting rights of felons in general." Maj. Op. at 8. *Logan* cannot be stretched to this extreme. Indeed, the case affirmed the ordinary meaning of the word "restore" as the return of something that had been taken away—a requirement that has been met in Walker's case.

Though purporting to rely on *Logan*, the majority is in fact adding a new dimension to our well-established inquiry: a requirement that the federal government take an affirmative act to restore Walker's voting rights, and that the affirmative act be explicitly targeted to addressing felons' rights. This requirement is out of sync with the Supreme Court's holding that restoration of rights may be accomplished by operation of law. *See Caron*, 524 U.S. at 313. Just as "[n]othing in the text of § 921(a)(20) requires a case-by-case decision to restore civil rights to this particular offender," 524 U.S. at 313, nothing in the text of the statute requires an affirmative act, explicitly branded as a token of forgiveness, on the part of the convicting jurisdiction. *Cf.* § 921(a)(20) (providing, in passive voice, that "[a]ny conviction . . . for which a person . . . has had civil rights restored shall not be considered a conviction for purposes of this

chapter"). Instead, the text directs us simply to look at whether Walker's rights have been restored "in accordance with the law of the jurisdiction in which the [criminal] proceedings were held." § 921(a)(20); *Beecham*, 511 U.S. at 371, 374. The majority cannot deny that Walker's right to vote under federal law has been restored within the ordinary meaning of the term—so in order to avoid a result it dislikes, it saddles the term "restore" with requirements relating to the form and the express purpose of the governing law which have no relation to the word itself, and no other support in the text of the statute.

I have no dispute with the majority's holding that the restoration of rights must be made with respect to a particular conviction, as the statute specifies. That requirement, however, is plainly met here, where the Tennessee state court determined that Walker should regain the state civil rights he lost as a result of his federal conviction. Consistent with principles of federalism, the constitutional provisions governing his right to vote in federal elections give federal effect to the state's "measure of forgiveness" for his conviction. *Logan*, 552 U.S. at 26.

### 3. The Majority's Purported "Fair Reading" of § 921(a)(20)

The "fair reading" of § 921(a)(20) dictated by the majority is, in the final analysis, a deviation from the ordinary meaning of the text apparently rooted in the majority's distaste for the prospect of reinstating a felon's gun rights.[52] Under a straightforward application of federal law, Walker's right to vote in federal elections and his right to serve on a federal jury have both been restored—that is, returned to him after they were previously lost as a result of his federal conviction. *See Logan*, 552 U.S. at 31 & n. 3. Unable to gainsay this reality, the majority moves the goalposts—the restoration of his voting rights is not a satisfactory "restoration" because it resulted not from an affirmative act of forgiveness by the federal government, but only the automatic operation of law.

---

[5]As support for its preferred policy outcome, the majority points to the annual appropriations ban prohibiting the Bureau of Alcohol, Tobacco, and Firearms from acting on petitions for "relief from the disabilities imposed by Federal laws with respect to the acquisition . . . or possession of firearms." 18 U.S.C. § 925(c). Although acknowledging that § 925(c) itself has no bearing on whether Walker's federal civil rights have been restored, the majority cites to legislative history connected with the appropriations ban to assert that Congress believed that "'those who commit felonies should not be allowed to have their right to own a firearm restored.'" Maj. Op. at 13 (quoting H.R. Rep. No. 104-183, at 15 (1995)). Taken at face value, this line from the legislative history proves too much. Congress has never repealed § 921(a)(20), which operates to restore the firearm rights of some who have committed felonies, and it goes without saying that a statement in legislative history cannot negate a duly enacted statute. In context, moreover, it is clear that Congress was expressing a view related to allocation of resources in reference to the application procedure contained in § 925(c); in its words, "[t]here is no reason to spend the Governments' [sic] time or taxpayer's money to restore a convicted felon's right to own a firearm." H.R. Rep. No. 104-183, at 15 (1995).

Having found a reason to disregard the restoration of Walker's federal voting rights, the majority abandons the position of high-minded symbolism to insist on the literal import of the plural:  the statute exempts only convictions for which civil rights, *plural*, have been restored, so the restoration of the single right the majority is willing to recognize cannot exempt Walker from the firearm disability.  The majority explains that the plural matters because the restoration of a single right reflects less trust and forgiveness, less confidence that the felon "can function as a normal citizen in more than one institutional context."  Maj. Op. at 10.  The federal government, of course, is not withholding any of Walker's civil rights—all three of which he possesses today.  Rather, federal law relies on Tennessee's trust in Walker to restore not one, but two of his federal citizenship rights.   Under § 1865(b)(5), because Tennessee has restored Walker's state civil rights, federal law restores his right to serve on a federal jury.  Similarly, under the constitutional provisions governing voter qualifications, because Tennessee has restored Walker's right to vote in state elections, federal law restores his right to vote in federal elections.

## CONCLUSION

It should be beyond the debate that the fairest reading of § 921(a)(20) would give effect to the ordinary meaning of the text and honor the interdependence inherent in our federal constitutional design.  Walker lost his federal civil rights to serve as a juror and to vote after his conviction, and, as a result of the Tennessee court order reinstating his state civil rights, those rights have been restored to him in accordance with federal law.  I would therefore hold that he has met the requirements of the exemption clause and is not subject to the federal firearms ban applicable to felons.